UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                          CRIMINAL NO. 11-196 (JRT/JSM)

      Plaintiff,

v.                                                                    <u>REPORT AND
RECOMMENDATION</u>

ANTONIO ANTWON ANDOLINI,
f/k/a Edward Sistrunk,

      Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on for hearing before the undersigned upon Defendant Antonio Antwon Andolini's Motion to Suppress Search Warrant Evidence [Docket No. 19]. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Assistant United States Attorney Karen B. Schommer appeared on behalf of the Government; and Julius A. Nolen, Esq. appeared on behalf of defendant Antonio Antwon Andolini, who was personally present.

## I.    BACKGROUND

Defendant, Antonio Antwon Andolini ("Andolini"), has been indicted on charges of mail fraud, unauthorized use of another person's credit card, social security fraud and identity theft. <u>See</u> Indictment [Docket No. 1]. Andolini has moved for an order suppressing evidence seized during the execution of two search warrants pursuant to the Fourth Amendment to the United States Constitution. Specifically, Andolini argued that the evidence should be suppressed because there is insufficient probable cause for

the issuance of the February 15, 2011 and February 22, 2011 search warrants for his apartment and storage locker located in Hilltop, Minnesota.   In addition, Andolini contended that the affiant for the supporting affidavit for the warrants "misled the signing judge by failing to include information about what was seized during execution of the first warrant, and by providing no information to explain why a second warrant for the same premises was necessary."

II.   **ANALYSIS**

A.   **Probable Cause**

Andolini submitted this motion on the basis of the four corners of the warrant and application.   As such, the sole issue presented to the Court is whether probable cause existed on the face of the search warrant applications to support the issuance of the February 15, 2011 and February 22, 2011 warrants for the Hilltop residence.

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit.   Illinois v. Gates, 462 U.S. 213, 236 (1983).   "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."   United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit. . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."   Gates, 462 U.S. at 238.   In reviewing this decision of the

issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed.  Id. at 238-39 (citation omitted); see also United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge.").  As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citing United States v Etheridge, 165 F.3d 655, 656 (8th Cir. 1999), quoting United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995)).

Detective Bernie Bogenreif ("Detective Bogenreif"), with the Hennepin County Sheriff's Office, applied for a warrant on February 15, 2011 to search a residence, comprised of Apartment #106 and a storage locker, located at XXXX Central Avenue in Hilltop, Minnesota.  The warrant was signed by an Anoka County District Judge, and executed on February 17, 2011.  The search warrant authorized the search for identifying documents not belonging to the occupants of the residence, including but not limited to: identification cards, drivers licenses, utility bills, banking information, social security documents, computers, all types of electronic storage media, social service documents, documents showing residency and past addresses, materials and supplies used to produce false identification.  The affidavit attached to the warrant provided in pertinent part as follows:

On 01/13/2011 a male identifying himself as Michael SLOANY GELLAR, 05/07/1979, applied for welfare benefits at the Century Plaza Building in the city of Minneapolis. The male used the Social Security number of Michael SLOANE GELLAR, 05/07/1979. Through investigation, your affiant learned that Michael Sloane Gellar is a white male who has a "CONAX" MN driver's license. The "CONAX" status may indicate many different things, among them that the person who is listed as "CONAX" once possessed a driver's license in the state of Minnesota. Your affiant believes this is true because of the existence of a driver's license photo in the data base. There are a number of scenarios where a "CONAX" record could exist without the presence of a photograph. Your affiant has also viewed "Face book" photos depicting the same person as the person in the Minnesota driver's license files. Your affiant believes that the white male in the DVS files is the real Michael Gellar.

The male using the real Gellar's social security number to apply for benefits is a light skinned black male with grey or hazel eyes. The person applying for benefits under the name of Gellar produced a false birth certificate under the name Michael Sloany Geller that appeared to have been computer generated.  He also produced a South Dakota ID card that he obtained on 12/22/2010 in the name of Michael Sloany Gellar as identification for the purpose of obtaining public assistance benefits.

Your affiant viewed a photo of the black male applying for the benefits and then checked Minnesota driver's license records for Michael Gellar. The photo of the male applying for benefits matches the driver's license photo of MICHAEL NMN GELLAR, 05/07/1979. The MN DL record for Michael NMN Gellar is a "Tracer" file indicating that the DL file is linked to a DL file under another name. Your affiant learned that the subject of the tracer file is ANTONIO ANTWON ANDOLINI, 05/06/1975. Your affiant compared photos of Andolini with the photos of "Gellar" and found that they match. Your affiant learned that Andolini has an alias of EDWARD ALANDIS SISTRUNK, 05/06/1975. Andolini has an active felony warrant for his arrest from Anoka County under the name Edward Sistrunk.

Your affiant located a driver's license address for Andolini of 4630 Central Av. NE, #106, in the city of Hilltop in Anoka County. Your affiant located a vehicle registering to Andolini,

> MN 394XXX parked in the parking area of this apartment building. While checking the building, your affiant encountered Andolini coming from apartment #106 at XXXX Central Av. NE. While checking the apartment building, your affiant viewed storage lockers for the apartments that are labeled with the associated apartment number. These storage units were viewed through a window while on the sidewalk approaching the building.

Detective Bogenreif also indicated in his affidavit that he is aware that people who use the identity of others often possess documents where identifying information is included, including actual social security cards or documents, driver's licenses, bills for services, banking information, job applications and other forms of personal documents. Further, Detective Bogenreif stated that he was aware that many false documents can be produced using personal computers, and the resulting data can be stored on various electronic media. Detective Bogenreif believed that evidence valuable to the investigation of identity theft and welfare fraud would be obtained at the residence.

The following items were seized from the apartment and the storage locker during the February 17, 2011 search: cellular phones, blank check paper, Brother typewriter, checks, documents, a computer hard drive, temporary driver's license with two names, receipts, insurance cards, and a social security card for another individual.

On February 22, 2011 Detective Bogenreif applied for another warrant to search a residence, comprised of Apartment #106 and storage locker, located at XXXX Central Avenue. The warrant was signed by an Anoka County District Judge, and executed on February 22, 2011. The search warrant authorized the search for identifying documents not belonging to the occupants of the residence, including but not limited to: identification cards, drivers licenses, utility bills, banking information, social security documents, computers, all types of electronic storage media, social service documents,

documents showing residency and past addresses, materials and supplies used to produce false identification, checkbooks, keys and cellular phones.

The affidavit attached to the February 22, 2011 warrant included the facts set forth in the affidavit in support of February 15, 2011 search warrant, and added the following facts:

> ON [sic] 02/17/2011, your affiant executed a search warrant at XXXX Central Ave. NE #106. During the execution of the search warrant, numerous Items of evidence pertinent to this case were recovered. Edward Sistrunk remains in custody at the Hennepin County Jail after being charged with identity theft.
>
> On 02/18/2011, your affiant learned that the suspect in this case, Edward Sistrunk released keys, papers and a cell phone to his brother, Arthur Sistrunk from his jail property. Your affiant spoke to the caretaker of XXXX Central Ave. NE and learned that Arthur Sistrunk continues to reside at XXXX Central Ave. NE, #106 in the city of Hilltop in Anoka County. According to the caretaker, Arthur Sistrunk paid the rent on the apartment leased by Edward Sistrunk.
>
> Your affiant believes that evidence valuable to the investigation of identity theft and welfare fraud will be obtained through a search warrant for XXXX Central Av. NE, #106, where your affiant encountered Antonio Andolini on 02/14/2011. Your affiant respectfully requests that a search warrant be granted to search the apartment and accompanying storage unit associated with XXXX Central Av. NE in the city of Hilltop in Anoka County.

The following items were seized from the apartment and the storage locker during the February 22, 2011 search: Minnesota driver's license for Antonio Andolini; Moneygram receipt, photographs, P.O. box key, copy of Minnesota driver's license for Thomas Anzur, computer tower, cellular phones, social security cards and EBT cards.

This Court finds that both warrant applications contain sufficient information from which a reasonable person could conclude that there was evidence of a crime located in

Apartment #106.  The affiant provided information in both affidavits that Andolini had used another person's social security number, a false birth certificate (that appeared to be computer generated) and a South Dakota identification card in order to apply for welfare benefits by posing as Michael Gellar.  The affiant also used Minnesota driver's license records to determine that the person posing as Geller was Andolini.  Further, based on Minnesota driver's license records, the Affiant was able to learn that the address for Andolini was Apartment #106 at XXXX Central Av. NE, and during his surveillance of the apartment complex, the affiant observed Andolini coming from Apartment #106.  In other words, there was sufficient evidence to connect Andolini to criminal activity and Andolini to Apartment #106 at XXXX Central Av. NE.

In the second affidavit, which was obtained after the execution of the initial search warrant, the affiant stated that Andolini had released jail property to his brother, which included keys, papers and a cell phone.  The affiant also indicated that he had learned from the caretaker of the Central Avenue apartment complex that the brother lived in Apartment #106 and paid rent on the apartment leased by Andolini.  Further, the affiant had knowledge that pertinent evidence related to Andolini's alleged use of another person's identity to obtain benefits had already been discovered at Apartment #106 at XXXX Central Av. NE as part of the February 17, 2011 execution of the initial search warrant.  In light of the officers' discovery that Andolini had released papers and a cellular phone to his brother after the execution of the initial search warrant, the affiant's knowledge that the brother also lived at Apartment #106, and the affiant's knowledge that the initial search of Apartment #106 turned up evidence of identity theft, this Court finds that a reasonable person could believe there was fair probability that

further evidence of a crime, in the form of the papers and cellular phone given by Andolini to his brother, would be found in Apartment #106 at XXXX Central Av. NE. after the initial February 17, 2011 search of the residence.

Therefore, based upon the totality of the circumstances, this Court finds that substantial evidence existed to support the finding of probable cause to issue both of the search warrants for the residence and storage area for Apartment #106 at XXXX Central Av. NE.

### B.   Franks Issue

At the motion's hearing, Andolini's counsel confirmed that he was requesting a Franks hearing related to the supporting affidavit for the February 22, 2001 search warrant. The Court denied this request at the hearing.

"Under the Fourth Amendment, law enforcement officers may not obtain a search warrant through statements which are intentionally or recklessly false." United States v. Hollis, 245 F.3d 671, 673 (8th Cir. 2001) (citation omitted). In order invalidate a search warrant on these grounds, a hearing must be held. However, such a hearing will only be granted if there is an offer of proof by the defendant that the supporting affidavit contains false information or an omission that was intentionally or recklessly included or excluded; and (2) the omission of the offending portion in the warrant affidavit negates a finding of probable cause. See Franks v. Delaware, 438 U.S. 154, 171-72 (1978); see also United States v. Williams, 477 F.3d 554, 558 (8th Cir. 2007) (finding that before any defendant can obtain a Franks hearing to determine whether to invalidate a search warrant, he or she must make a substantial preliminary showing through an offer of proof (in the form of supporting affidavits or similarly reliable statements) that the

affidavits supporting the search warrant contain false information or an omission that was intentionally or recklessly excluded); United States v. Underwood, 364 F.3d 956, 964 (8th Cir. 2004) (A "defendant is entitled to a Franks hearing if he makes a substantial preliminary showing that a false statement was included in the warrant affidavit either intentionally or with reckless disregard for the truth and the information was necessary to the finding of probable cause.") (citation omitted); United States v. Anderson, 243 F.3d 478, 482 (8th Cir. 2001) ("'A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing'" for a Franks hearing) (quoting United States v. Mathison, 157 F.3d 541, 548 (8th Cir.1998) cert. denied, 525 U.S. 1089 (1999)).  No such showing was made here.

Having failed to present any evidence to this Court to show that the supporting affidavit to the February 22, 2011 search warrant contained false information or an omission that was intentionally or recklessly included or excluded, this Court rejected Andolini's request for a Franks hearing.

## III.    RECOMMENDATION

For the reasons set forth above, it is recommended that:

Defendant Antonio Antwon Andolini's Motion to Suppress Search Warrant Evidence [Docket No. 19] be **DENIED**.

Dated:        August 4, 2011

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 18, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rules shall be limited to 3500 words.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 18, 2011**.